**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*,<br>                                        *Plaintiffs*,<br><br>-v.-<br><br>JOHN S. LYONS, M.D., *et al.*,<br>                                        *Defendants*. | Civil Action<br>No. 11 Civ. 2190 (JG)(VVP)<br><br><br><br>October 12, 2011 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT
BY DEFENDANTS
HARVEY STERN, M.D.; JOSEPH MCCARTHY, M.D.;
ATLANTIC RADIOLOGY IMAGING P.C.; ATLANTIC RADIOLOGY P.C.;
SIMON KORENBLIT; EDWARD ATBAYSHAN; AND ALEXANDER ZHAROV**

TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................i

ARGUMENT....................................................................................................................1

     I.     State Law and Allstate's Insurance Contracts Require Arbitration
          of This Dispute..............................................................................1

          A.    Arbitration Does Not Limit Allstate's Ability To Recover For
               Its Alleged Damages    1

          B.    Courts Recognize that New York Law Mandates the Option
               To Arbitrate    2

          C.    Allstate's Insurance Contracts Further Support Arbitration of
               This Dispute by All Moving Defendants Pursuant to the
               Federal Arbitration Act ("FAA")    4

          D.    The Moving Defendants Are Entitled To Arbitrate All Claims  5

     II.    Allstate's Complaint Does Not Allege Specific Facts Sufficient To
          Establish Fraudulent Incorporation.....................................................7

     III.    The Moving Defendants Are Not Co-Conspirators........................8

     IV.    Allstate Has Not Adequately Pled Any RICO-Related Claims.......9

CONCLUSION...................................................................................................................10

- TABLE OF AUTHORITIES

<u>CASES</u>

*Anderson v. Rochester-Genesee Reg'l Transp. Auth.*,
   337 F.3d 201 (2d Cir. 2003)..................................................................................8

*Clarus Medical, LLC v. Myelotec, Inc.*, No. 05 Civ. 934,
   2005 WL 3272139 (D. Minn. Nov. 30, 2005)........................................................7

*Collins & Aikman Prods. Co. v. Building Systems, Inc.*,
   58 F.3d 16 (2d Cir. 1995)......................................................................................5

*Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*,
   753 F. Supp. 1078 (E.D.N.Y. 1990).......................................................................6

*Countrywide Ins. Co. v. DHD Med., P.C.*,
   926 N.Y.S. 2d 293 (N.Y. App. Div. 2011)..............................................................3

*Country-Wide Ins. Co. v. Frolich*,
   465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983)....................................................1, 2, 3, 4

*Country-Wide Ins. Co. v. Harnett*,
   426 F. Supp. 1030 (S.D.N.Y. 1977)...................................................................1, 4

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.*,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011)..................................................................10

*Garrity v. Lyle Stuart, Inc.*,
   40 N.Y.2d 354 (1976)............................................................................................7

*Goldstein v. Siegel*,
   244 N.Y.S.2d 378 (N.Y. App. Div. 1963)...............................................................9

*Grove Press, Inc. v. Angleton*,
   649 F.2d 121 (2d Cir. 1981)..................................................................................8

*Health & Endurance Med., P.C. v Deerbrook Ins. Co.*,
   845 N.Y.S.2d 66 (N.Y. App. Div. 2007)...............................................................10

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991)..................................................................................8

*Lyeth v. Chrysler Corp.*,
   929 F.2d 891 (2d Cir. 1991)..................................................................................1

*Martin v. SCI Mgmt. L.P.*,
   296 F. Supp. 2d 462 (S.D.N.Y. 2003)...................................................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995)................................................................................................7

*McDonnell Douglas Fin. Corp. v. Penn. P&L Co.*,
   858 F.2d 825 (2d Cir. 1988)..................................................................................6

*Oldroyd v. Elmira Sav. Bank, FSB*,
   134 F.3d 72 (2d Cir. 1998)....................................................................................5

*Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med., P.C.*, No.
   601112/00.........................................................................................................2, 3

*Remy Amerique, Inc. v. Touzet Dist., S.A.R.L.*,
  816 F. Supp. 213 (S.D.N.Y. 1993)..................................................................................7

*Ross v. Am. Express Co.*,
  547 F.3d 137 (2d Cir. 2008)..........................................................................................5

*Ryder Truck Lines, Inc. v. Majorano*,
  44 N.Y.2d 364 (1978)....................................................................................................4

*Salisbury v. GEICO*,
  414 N.Y.S.2d 793 (N.Y. App. Div. 1979).....................................................................6

*Schlaifer Nance & Co. v. Estate of Warhol*,
  119 F.3d 91 (2d Cir. 1997)............................................................................................9

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999)............................................................................................6

*WMT Investors, LLC v. Visionwall Corp.*, No. 09 Civ. 10509,
  2010 WL 2720607 (S.D.N.Y. June 28, 2010)...............................................................7

<u>STATUTES</u>

N.Y. Gen. Bus. Law § 349................................................................................................3, 9
N.Y. Insurance Law § 409................................................................................................1, 2
N.Y. Insurance Law § 5106...........................................................................................passim

- ARGUMENT

- State Law and Allstate's Insurance Contracts Require Arbitration of This Dispute

Allstate mistakenly believes that the Moving Defendants request arbitration in order to frustrate Allstate's recovery of allegedly improper no-fault reimbursements. Opp. Br. at 5-6. This is not so. Allstate may obtain all the relief it seeks in arbitration, and the Moving Defendants are entitled to elect arbitration under state law and contract.

- Arbitration Does Not Limit Allstate's Ability To Recover For Its Alleged Damages

Defendants' option to arbitrate does not undermine Allstate's claimed right to bring affirmative recovery actions under *Mallela*, nor does it detract from any enforcement obligation under Ins. Law § 409. *See* Opp. Br. at 9. In particular, Defendants' selection of an arbitral rather than judicial forum has no effect on the relief that Allstate may seek and receive. If Allstate can properly plead and prove that the Moving Defendants improperly received no-fault benefits, then the arbitrator can award these benefits to Allstate. Allstate can then confirm and enforce this award judicially. Indeed, by ordering arbitration, the

court in

*Country-Wide Ins. Co. v. Frolich,* 465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983), recognized

insurers' ability to make affirmative recoveries of no-fault benefits through arbitration.

Tellingly, Allstate does not argue it would be unable to make affirmative recoveries in

arbitration.

Arbitration also does not deny Allstate the ability to utilize the courts in support of

affirmative recoveries. The arbitration process itself envisions a substantial judicial role.

*See* N.Y. Ins. Law § 5106(c). Arbitration awards "are subject to judicial review and may

be vacated or modified for any one of the several grounds set forth" by statute. *Harnett*

, 426 F. Supp. at 1033. And where an award exceeds $5,000, either party may obtain *de*

*novo* judicial review. *See Frolich,* 465 N.Y.S.2d at 1092; N.Y. Ins. Law § 5106(c).

Section 5106(b)'s arbitration option is therefore completely consistent with the

authorities on which Allstate relies most heavily, *see* Opp. Br. at 6-9 – *Mallela* and its

progeny, the Department of Insurance opinion cited by Allstate, and Ins. Law § 406,

which merely suggest that insurers are not barred from seeking improperly paid no-fault

benefits through affirmative actions. Arbitration erects no such bar. Allstate remains free

to file judicial actions, and to seek judicial review, confirmation, or enforcement of any

arbitral award. The no-fault laws simply provide Defendants the ability to select the

arbitral forum to resolve no-fault disputes in the first instance. Nothing in these

authorities addresses, let alone precludes, this arbitration option.

- Courts Recognize that New York Law Mandates the Option To Arbitrate
  Critically, Allstate identifies no authority that purports to overrule or abrogate

*Country-Wide Ins. Co. v. Frolich,* 465 N.Y.S.2d 446 (N.Y. City Civ. Ct. 1983) – a directly

on-point decision concluding that when an insurer brings an affirmative action to recover

improperly paid no-fault benefits, the claimant (or assignee) may elect to arbitrate the

merits of the action. This detailed, well-reasoned opinion provides a sensible

harmonization of Allstate's claimed right to initiate recovery actions, and the right of claimants to arbitrate such disputes under § 5106(b).

The only statement Allstate identifies that is arguably at odds with *Frolich* appears in an unreported slip opinion that, to the Moving Defendants' knowledge, is unavailable in any public, full-text searchable database. But this opinion from *Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med., P.C.*, No. 601112/00 (Opp. Br. Exh. C), is concerned almost entirely with the unrelated questions whether the 30-day rule of § 5106(a) bars affirmative recovery, and whether alleged "fraudulent incorporation" provides a valid basis for such recovery. The only mention of arbitration appears in a single, weakly worded sentence in which the court extended Ins. Law § 409's requirement that insurers internally "coordinat[e] . . . initiation of civil actions" to somehow preclude arbitration under § 5106(b).

Unlike *Frolich*, the *Progressive Northeastern* opinion fails to recognize or even discuss the fact that arbitration presents no bar to any affirmative recovery envisioned by § 409 – or more importantly, that "[i]t is not provided or implied anywhere in the law that the fact that the monies were paid [on a no-fault claim] . . . should prevent this arbitration." *Frolich*, 465 N.Y.S.2d at 449.  The striking brevity of its analysis shows that the court failed to consider carefully the text, legislative intent, and implementing regulations of the no-fault arbitration provision. In contrast, the *Frolich* opinion, which is reported, is centrally concerned with the no-fault arbitration option, devotes extensive discussion to resolving the issue, and carefully supports its conclusion with the text and history of the statute. Also, neither *Frolich* nor § 5106 contains any language limiting the arbitration option solely to recovery actions based on allegedly "mistaken" payment. Thus, between *Frolich* and *Progressive Northeastern*, *Frolich* is undoubtedly the stronger authority on the question whether arbitration may be compelled in no-fault recovery suits. Moreover, contrary to Allstate's contention, *see* Opp. Br. at 11, no intervening case law

diminishes *Frolich*'s conclusion, for *Frolich* imposes no bar to affirmative recovery; indeed, *Frolich* explicitly permits such an action to proceed in the arbitral forum.

Allstate also errs in its criticism of the Moving Defendants' citation to *Countrywide Ins. Co. v. DHD Med., P.C.*, 926 N.Y.S. 2d 293, 293 (N.Y. App. Div. 2011), for the proposition that the issue of fraudulent incorporation is "for the arbitrator, not the courts." *See* Opp. Br. at 12 & n.18. *DHD Medical* contains no language limiting arbitration of fraudulent incorporation claims exclusively to defenses. A straightforward reading of the opinion shows that by describing the "defense of fraudulent incorporation," the court merely restated the procedural posture of that case. Moreover, it would make little sense, and impose an odd and unnecessary asymmetry, to refer questions of "fraudulent incorporation" to arbitrators only when presented defensively, but to require judicial determination of the exact same question if presented affirmatively.

Indeed, denying § 5106(b)'s option to arbitrate in recovery actions would effectively nullify the mandate – insurers could simply pay claims as requested, but subsequently initiate litigation in court. But this outcome would clearly subvert important purposes of the no-fault law, including a reduction in "the amount of litigation in the courts," *Harnett*, 426 F. Supp. at 1032, and the legislature's decision to provide claimants the "less costly" arbitration option where insurers have "a greater ability to bear the costs of litigation," *id.* at 1034.

Allstate's textual analysis of § 5106 is also flawed. Allstate argues that § 5106(b) applies only to disputes within the no-fault claims process, and that affirmative recovery actions are plainly not part of this process. But Allstate overlooks language emphasizing the statute's expansive breadth – to "any dispute" involving the insurer's liability to pay benefits, and for "any other matter which may arise" as to payment. *See* § 5106(b). Such broad language clearly encompasses disputes over benefits previously paid, but

subsequently questioned. The New York Court of Appeals has emphasized that § 5106 provides "a broad arbitration clause" that embraces "all disputes with respect to entitlement to first-party benefits." *Ryder Truck Lines, Inc. v. Majorano*, 44 N.Y.2d 364, 369 (1978)

. The broad inclusion of "all" disputes plainly excludes any temporal distinction based on when benefits have been or might be paid. The *Frolich* court recognized this breadth in holding that the statute's "*any* dispute" language extended to disputes over benefits previously paid. *See Frolich*, 465 N.Y.S.2d at 447 (emphasis in original).

- Allstate's Insurance Contracts Further Support Arbitration of This Dispute by All Moving Defendants Pursuant to the Federal Arbitration Act ("FAA")

Arbitration is also compelled by contract. Pursuant to New York law, all of the auto insurance policies underlying the disputed no-fault claims provide, or are construed to provide, the same arbitration option as in § 5106(b). *See* Ins. Law § 5103(h). It is therefore helpful here to reference the extensive body of authority concerning arbitration agreements and the FAA. Congress enacted the FAA "to replace judicial indisposition to arbitration," and the statute expresses "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008)

 (internal quotation marks and citations omitted). The Second Circuit explains that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Id.* (internal quotation marks and citation omitted). This same federal policy applies here.

Under this view, the language supplied by § 5106(b) clearly provides for arbitration in disputes such as this one. Courts "construe arbitration clauses as broadly as possible," and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998)

 (internal quotation marks and citations omitted) (alteration in original). Arbitration

clauses using the same or similar language as § 5106(b) – which provides arbitration for "any dispute" or "any other matter which may arise" as to payment – are regarded as "broad" arbitration clauses, which justify a "presumption of arbitrability." *Id.*; *see also Collins & Aikman Prods. Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (a clause requiring arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" is "the paradigm of a broad clause"). Thus, arbitration is presumed for disputes concerning no-fault benefits payments, and Allstate's present affirmative recovery suit clearly concerns a dispute over such payments. Because there is no statutory or contractual language that precludes arbitration in disputes where benefits have already been paid, there is no valid basis for precluding arbitration as the Moving Defendants now request.

- • The Moving Defendants Are Entitled To Arbitrate All Claims

Allstate also argues that certain of the defendants are not entitled to elect arbitration, *see* Opp. Br. at 13-14; that the RICO and declaratory action claims cannot be arbitrated, *see id.* at 14-15; and that the defendants waived arbitration, *see id.* at 12-13. These arguments have no merit.

There is a "strong federal presumption against the waiver" of arbitration rights, *see McDonnell Douglas Fin. Corp. v. Penn. P&L Co.*, 858 F.2d 825, 833 (2d Cir. 1988), and a party resisting arbitration on this ground "bears a heavy burden." *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1086 (E.D.N.Y. 1990). Courts generally find waiver only after "litigation of substantial issues going to the merits." *McDonnell Douglas*, 858 F.2d at 833. This litigation has not progressed beyond a motion to dismiss, and it is hard to conceive of an earlier point at which to request arbitration. Thus, there is no waiver here.

The RICO claims are arbitrable despite the fact that Allstate has not named Atlantic Imaging and Atlantic Radiology as RICO defendants. Under a contract analysis, when a

non-signatory to an arbitration agreement seeks to compel arbitration with a signatory –

Allstate, in this case – courts will estop the signatory from avoiding arbitration "when the

issues the nonsignatory is seeking to resolve in arbitration are intertwined with the

agreement that the estopped party has signed." *Smith/Enron Cogeneration Ltd. P'ship v.*

*Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)

 (internal quotation marks omitted). In other words, a litigant cannot shield itself from

arbitration by suing only related parties that have no arbitration agreement with the

litigant. *See id.* This is exactly what Allstate is attempting here. However, Allstate's RICO

claims are clearly intertwined with the underlying dispute over no-fault benefits

payments. Thus, similar to *Smith/Enron*, Allstate may not avoid arbitration on the ground

that only Atlantic Imaging and Atlantic Radiology are formally claimants or assignees

under § 5106(b) and the insurance policy contracts, where the key officers and

shareholders of these corporations themselves seek arbitration, and where the issues they

seek to resolve are intertwined with the arbitrable issues. *See id.*

Allstate is also incorrect that its declaratory judgment claims may not be arbitrated,

and that any such non-arbitrability precludes arbitration of all claims at issue. In essence,

Allstate seeks to "transform[] arbitrable claims into nonarbitrable ones depending on the

form of relief prayed for" – a maneuver that courts in this Circuit reject. *Remy Amerique,*

*Inc. v. Touzet Dist., S.A.R.L.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993)

. Nothing in § 5106(b)'s broad wording precludes arbitration where a party seeks relief

through declaratory judgment. The merits of Allstate's claims are therefore for the

arbitrator. As appropriate, of course, Allstate might seek post-arbitration relief to effect

the results of such arbitration.

- Allstate's Complaint Does Not Allege Specific Facts Sufficient To Establish Fraudulent Incorporation

Allstate argues that it adequately alleges fraudulent incorporation based on Stern's

and McCarthy's lack of control over corporate records, business affairs, and employment

matters. Opp. Br. at 16-17. But these assertions are unsupported by the sparse allegations actually contained in the complaint. Tellingly, Allstate does not quote specific statements from the complaint to explain how they might support its fraudulent incorporation claims.

With respect to McCarthy and Atlantic Radiology, for instance, Allstate levels a series of conclusory accusations that McCarthy entered into "management agreements" with the Staff Defendants (i.e., Korenblit, Atbayshan, and Zharov), allowed the Staff Defendants to control "all material aspects" of the corporation's operation, and lacked knowledge of the corporation's business affairs. Opp. Br. at 17. But as explained in the Moving Defendants' principal brief, the only allegations in the complaint that even allude to McCarthy state merely that one Staff Defendant was the contact for Atlantic Radiology's web site domain name, and that some of the Staff Defendants held "manager" titles. Allstate does not explain how these few specific allegations provide even a plausible inference of excessive control, let alone the "extreme level of wrongdoing" required under *Mallela* for fraudulent incorporation.

Allstate's allegations against Stern and Atlantic Imaging do not fare much better. Again, Allstate does not even attempt to connect specific text in Stern's questionnaire to its broader conclusions. This is understandable, for the questionnaire in fact establishes that Stern – not the Staff Defendants – ultimately exercised control and authority as sole shareholder over the practice of medicine and business at Atlantic Imaging, even if he permissibly delegated certain matters. Significantly for both Stern and McCarthy, Allstate does not explain how it could allege "fraudulent incorporation" absent any allegations suggesting that the Staff Defendants controlled the practice of medicine, or received any improper compensation. Quite simply, Allstate's specific allegations against McCarthy and Stern, even if successfully proven, would not establish any fraudulent incorporation. These claims must be dismissed.

- The Moving Defendants Are Not Co-Conspirators

Allstate argues that the Moving Defendants are liable for the wrongdoing of other defendants on a conspiracy theory. Opp. Br. at 18-19. There is no substantive tort of civil conspiracy under New York law; a conspiracy allegation merely enables a plaintiff to hold some parties responsible in damages for the acts of others. *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981)

. But conspiracy requires "common action for a common purpose by common agreement or understanding among a group, from which common responsibility derives." *Goldstein v. Siegel*, 244 N.Y.S.2d 378, 382 (N.Y. App. Div. 1963)

. This generally requires allegations establishing "at least some of the facts of agreement or separable acts, if any, of the alleged co-conspirators in order to support the responsibility of each for the acts of all the others." *Id.* Allstate's complaint, however, makes no allegation that any of the Moving Defendants entered into any agreement or understanding with any other defendant, or even knew of any defendant, aside from Lyons. Indeed, the only common link between the Moving Defendants and other defendants is that they had the misfortune to work with Lyons – who was only one of several radiologists that worked at Atlantic Imaging. *See* Am. Compl. Exh. 10. Yet there is no allegation that the Moving Defendants even knew of Lyons's alleged misdeeds, let alone came to agreement with him or other defendants as to a scheme to defraud. Absent conspiracy, none of the Moving Defendants can be held liable for any fraud by the remaining defendants, whatever the merits of Allstate's claims against those defendants.

- Allstate's Has Not Adequately Pled Any RICO-Related Claims

Allstate does not, and cannot, offer any response specific to the Moving Defendants' principal RICO arguments – particularly as to open- and closed-ended continuity, proximate causation, and ripeness. Allstate's RICO claims should be dismissed on these grounds.

For instance, Allstate does not deny that the Complaint lists allegedly fraudulent

mailings by McCarthy and Atlantic Radiology over a period of less than one year, and therefore fails to establish closed-ended continuity. Nor does Allstate explain why the two discrete frauds it alleges should be artificially fragmented into multiple acts under RICO – contrary to the Second Circuit's admonitions, *see Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) – simply because they involved multiple mailings. Allstate also does not explain how there could exist open-ended continuity, where Atlantic Radiology is presently defunct according to the Complaint, and where there is no ongoing fraud even assuming the corporations' original licensure was improper. On ripeness, Allstate misses the point by stating merely that Allstate has suffered damages. Opp. Br. at 24. Regardless of the damages it alleges, Allstate cannot assert RICO in federal court without a separate basis for jurisdiction, and without having sought state law redress for its injuries. Similarly, Allstate incorrectly seeks to sidestep the lack of proximate causation by invoking common law civil conspiracy. Opp. Br. at 24. But this state law concept has no application to the "more rigorous" federal statutory standing inquiry under RICO. *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 770 F. Supp. 2d 497, 520 (E.D.N.Y. 2011). Any injury inflicted by Lyons's fraud was independent of subsequent acts by the Moving Defendants, precluding RICO standing.

Finally, the NF-3 forms (attached as Exhibit A to Allstate's memorandum, but not included in the Complaint) belie the assertion that Stern and McCarthy fraudulently concealed or misrepresented Lyons's involvement in treatment, *see* Opp. Br. at 4-5, 25. Lyon's involvement is facially evident, after all. Attached to each form is a report signed by Lyons explaining his MRI interpretation, which clearly shows Lyons's role in treatment. Box 16, labeled "Treating Provider," lists Stern or McCarthy, but this is no misrepresentation. The term "Treating Provider" is undefined, and Stern and McCarthy

often listed themselves as the physician broadly in charge of treatment. Thus, the NF-3 forms did not misrepresent Lyons's involvement – they accurately showed that Lyons performed the MRI analysis, and they sought payment based on Lyons's employee (not contractor) status. There is no predicate RICO fraud on this basis.

- · CONCLUSION

For the foregoing reasons, and for the reasons stated in the Moving Defendants' principal brief, this Court should grant the motion to compel arbitration or dismiss the complaint.

Dated: Brooklyn, New York
      October 12, 2011

LAW OFFICE OF GARY TSIRELMAN, P.C.


By: _____/s/_____

GARY TSIRELMAN

Attorneys for Defendants Stern, McCarthy, Atlantic
    Imaging, Atlantic Radiology, Korenblit,
    Atbayshan, and Zharov

65 Jay Street
Brooklyn, New York 11201

(718) 438-1200

(718) 438-8883 *facsimile*